RECEIVED
FEB 2 0 2009
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| VOORHIES SUPPLY CO., L.L.C | CIVIL ACTION NO. 07-1357 |
| VERSUS | JUDGE DOHERTY |
| OHIO CASUALTY INS. CO. ET AL. | MAGISTRATE JUDGE METHVIN |

## MEMORANDUM RULING

Pending before this Court are two motions for summary judgment: (1) Motion for Partial Summary Judgment [Doc. 28] filed by plaintiff Voorhies Supply Co., L.L.C. ("Voorhies Supply"); and (2) Joint Motion for Summary Judgment [Doc. 43] filed by defendants The Ohio Casualty Insurance and West American Insurance Company (collectively, "OCG") and American Manufacturers Mutual Insurance Company and American Motorist Insurance Company (collectively, "Kemper").

Plaintiff moves for summary judgment "on the issue of liability alone" – hence, the request for "partial" summary judgment – contending it is entitled to "judgment as a matter of law on the grounds that all defendants as insurers breached the duty of good faith and fair dealing they owed to their insured .... by acts of misrepresentation which constituted a breach of the duties imposed on the defendants by LSA: R.S. 22:1220(B)[.]"[1]

---

[1] This Court notes that since the filing of the parties' motions, La. Rev. Stat. §22:1220 has been renumbered as La. Rev. Stat. §22:1973 by Acts 2008, No. 415, effective Jan. 1, 2009. The substance of the law has not changed. Because Section 22:1220 was in effect at the time of the alleged breach of duty, this Court will refer to the section as it was numbered at the time of the alleged breach.

La. Rev. Stat. §22:1220 states in pertinent part:

A. An insurer, including but not limited to a foreign line and surplus line insurer, owes to his insured a duty of good faith and fair dealing. The insurer has an affirmative duty to adjust claims fairly and promptly and

In their joint motion for summary judgment, defendants "move the Court for summary judgment in [their] favor . . . dismissing the claims brought against them by [p]laintiff . . .with prejudice." Therefore, apparently, defendants seek dismissal *all* of the claims plaintiff has alleged against them.

The defendant insurers jointly oppose plaintiff's motion [Doc. 41], and plaintiff opposes the insurance companies' joint motion [Doc. 45].

For the following reasons, both motions are DENIED.

I. **Factual and Procedural History**

The instant litigation involves an underlying lawsuit for personal injuries. Voorhies Supply was in the business of supplying products and equipment to sugar mills in Iberia and St. Martin Parishes. Elvist Tabor ("Tabor") was an employee of several of the sugar mills where Voorhies Supply sold products. In 2003, Tabor was diagnosed with mesothelioma and subsequently filed suit against Voorhies Supply and others. Voorhies Supply gave notice of the suit to the defendant insurance companies. Upon receiving notice of the suit, OCG assigned the matter to claims adjuster Paula Matheny, who hired Julie Scheib of the Voorhies and Labbe[2] law firm to represent OCG. Ms. Matheny sent several letters to Voorhies Supply, including a reservation of rights letter, in which

---

to make a reasonable effort to settle claims with the insured or the claimant, or both. Any insurer who breaches these duties shall be liable for any damages sustained as a result of the breach.

B. Any one of the following acts, if knowingly committed or performed by an insurer, constitutes a breach of the insurer's duties imposed in Subsection A:

(1) *Misrepresenting pertinent facts or insurance policy provisions relating to any coverages at issue.* . . .

La. Rev. Stat. 22:1973(A) & (B)(1) (West 2009) (emphasis added).

[2] No known relation to Voorhies Supply Co., L.L.C.

OCG reserved certain rights with regard to the insurance coverage, OCG provided to Voorhies Supply, however, a defense for Voorhies Supply, and hired Julie Scheib of Voorhies & Labbe to defend Voorhies Supply at OCG's and/or OCG and Kemper's expense. Ms. Scheib reported to both OCG and Kemper, along with Voorhies Supply. On October 6, 2003, Jean Woodcock, an employee of Ken Randall America acting as a third party claims administrator for Kemper, also sent a reservation of rights letter to Voorhies Supply on behalf of Kemper.

Ms. Scheib defended the underlying personal injury suit, *Tabor*, in state court and ultimately represented Voorhies Supply, OCG, and Kemper in the state court lawsuit. During the course of the *Tabor* litigation, discovery indicated Tabor worked a total of 24 years in sugar mills where Voorhies Supply provided products which allegedly contained asbestos, from approximately 1978 or 1979 until 2003 when Tabor was diagnosed with mesothelioma. However, Voorhies Supply apparently was not aware its products might have contained any hazardous substances until approximately 1988 or 1989. This information was communicated to Voorhies Supply, OCG and Kemper by Ms. Scheib.

Settlement negotiations in the underlying state court personal injury suit were conducted in December 2005 and again, in March 2007. During the March 2007 negotiations, Voorhies Supply had a pending summary judgment motion with the state court. Tabor's counsel communicated to counsel for all defendants, Ms. Scheib included, a settlement offer of $500,000.00 and also communicated to Ms. Scheib that if the case did not settle before the time the motion for summary judgment was decided, the case would go to trial. Ms. Scheib communicated this to Kemper, OCG and Voorhies Supply.

On March 31, 2007, Ms. Matheny, claims representative of OCG, and Ms. Woodcock, claims representative of Kemper, communicated via e-mail regarding settlement of the state court case. Ms.

Scheib was asking for settlement authority for a contribution toward settlement of $100,000.00. From what this Court can discern based on the briefs filed in this matter by the parties, the insurance companies apparently took the position that Mr. Tabor's exposure period was 24 years; Kemper had 8 policies in force and effect during those 24 years and OCG had 2 years total of coverage; the insurance company further took the position that the law, and thus liability, in Louisiana is based upon "exposure;" and thus, Kemper and OCG could be liable in settlement only for the percentage of the years for which they had coverage, versus the total exposure period of 24 years.

Evidently, Ms. Scheib became aware of this position in some fashion, and Ms. Scheib responded by letter to OCG and Kemper as follows:

> Even if Voorhies Supply could be held liable for any bodily injury before 1988 (and we have concluded that it could not), **there is no case law in Louisiana which holds that an insured is responsible for any uninsured years.** Should Voorhies Supply litigate the issue against its insurers, **the Court would rule that the insurance companies are responsible for any judgment against Voorhies Supply pro rata up to their limits of liability with no contribution from the insured, Voorhies Supply.**
>
> Moreover, **should I be asked to go to Voorhies Supply and request a contribution to the settlement, I could not give Voorhies Supply any advice regarding coverage.** I would, however, have a duty to advise Voorhies Supply to retain a lawyer to provide it with advice.
>
> Any good coverage lawyer who I would recommend to Voorhies Supply would in all likelihood immediately enroll as additional counsel and file a Third Party Demand against the insurance companies, **seeking a ruling that Voorhies Supply will not be responsible for any portion of a judgment against it.** This would not be in the best interests of any of the parties.[3] (Emphasis added)

Notwithstanding Ms. Scheib's opinion, plaintiff contends that on April 3, 2007, the day on which the decision had to be made about settlement or the case would go to trial according to

---

[3] *See* Letter dated April 2, 2007 from Julie Scheib Viator to Jean Woodcock, and cc'd to Paula Matheny, attached as Exhibit "G" to defendants' memorandum in support of motion for summary judgment, Doc. 43.

Tabor's attorney, *for the very first time*, Ms. Woodcock called Ken McGrew, President of Voorhies Supply, and informed Mr. McGrew the law in Louisiana was "exposure," Kemper and OCG intended to settle the case by paying only pro-rata for years for their coverage versus the 24 exposure years, and that Voorhies Supply would be responsible for the remainder of the settlement amount – all in direct contradiction to Ms. Scheib's legal opinion rendered. It is the plaintiff's position – and it does not appear to be disputed – Ms. Woodcock did not consult with another attorney before making this call and informing her insured that this was the opinion of the insurers regarding coverage, Louisiana law, and Voorhies Supply's possible liability and individual exposure. Voorhies Supply contends it was not led to believe during the entirety of the state court law suit that it would have to contribute any amounts toward the settlement of the lawsuit and was only notified by Kemper and OCG of this fact on the eve of the settlement.

Based on this communication **from its insurers,** Voorhies Supply agreed to contribute $72,912.50 to the settlement, *under protest and reserving rights to go against Kemper and OCG.* Thus, Kemper contributed 33.34% to the settlement, OCG contributed 8.33%, and Voorhies Supply contributed the remainder, or 58.33 %, for a total contribution of $72,912.50.

Voorhies Supply thereafter filed suit against the defendant insurers on or around June 27, 2007 in the 16th Judicial District Court for the Parish of Iberia, alleging what appear to be three claims: (1) unauthorized practice of law in violation of La. Rev. Stat. §37:212;[4] (2) breach of the

---

[4] La. Rev. Stat. 37:212(A) states:

A. The practice of law means and includes:

(1) In a representative capacity, the appearance as an advocate, or the drawing of papers, pleadings or documents, or the performance of any act in connection with pending or prospective proceedings before any court of record in this state; or

duty of good faith and fair dealing in violation of La. Rev. Stat. §22:1220; (3) unfair trade practices; and (4) unjust enrichment. Defendants removed the case to this Court on the basis of diversity jurisdiction on August 17, 2007. Plaintiffs amended their complaint on October 23, 2008, and now appear to allege the following four claims against defendants: (1) unauthorized practice of law in violation of La. Rev. Stat. §37:212; (2) breach of the duty of good faith and fair dealing and the affirmative duty to adjust claims fairly and promptly in violation of La. Rev. Stat. §22:1220; (3) unjust enrichment; and (4) unfair claims settlement practices in violation of La. Rev. Stat. §22:1214(14).[5] Thus, it appears the plaintiff has abandoned its claim for unfair trade practices and

---

(2) For a consideration, reward, or pecuniary benefit, present or anticipated, direct or indirect;

    (a) The advising or counseling of another as to secular law;

    (b) In behalf of another, the drawing or procuring, or the assisting in the drawing or procuring of a paper, document, or instrument affecting or relating to secular rights;

    (c) The doing of any act, in behalf of another, tending to obtain or secure for the other the prevention or the redress of a wrong or the enforcement or establishment of a right; or

    (d) Certifying or giving opinions as to title to immovable property or any interest therein or as to the rank or priority or validity of a lien, privilege or mortgage as well as the preparation of acts of sale, mortgages, credit sales or any acts or other documents passing titles to or encumbering immovable property.

La. Rev. Stat. §37:212 (West. 2009).

[5] Also since the filing of the parties motions, La. Rev. Stat. §22:1214 has been renumbered as La. Rev. Stat. §22:1964. by Acts 2008, No. 415, effective Jan. 1, 2009. The substance of the law has not changed. Because Section 22:1214 was in effect at the time of the alleged violation, this Court will refer to the section as it was numbered at the time of the alleged violation.

La. Rev. Stat. 22:1214(14) states:

**14) Unfair claims settlement practices.** Committing or performing with such frequency as to indicate a general business practice any of the following:

(a) Misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue.

(b) Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies.

has substituted in its place a claim for unfair claims settlement practices and this Court will go forward upon that assumption.

---

> (c) Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies.
>
> (d) Refusing to pay claims without conducting a reasonable investigation based upon all available information.
>
> (e) Failing to affirm or deny coverage of claims within a reasonable time after proof of loss statements have been completed.
>
> (f) Not attempting in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear.
>
> (g) Compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds.
>
> (h) Attempting to settle a claim for less than the amount to which a reasonable man would have believed he was entitled by reference to written or printed advertising material accompanying or made part of an application.
>
> (i) Attempting to settle claims on the basis of an application which was altered without notice to, or knowledge or consent of, the insured.
>
> (j) Making claims payments to insureds or beneficiaries not accompanied by statement setting forth the coverage under which the payments are being made.
>
> (k) Making known to insureds or claimants a policy of appealing from arbitration awards in favor of insureds or claimants for the purpose of compelling them to accept settlements or compromises less than the amount awarded in arbitration.
>
> (l) Delaying the investigation or payment of claims by requiring an insured, claimant, or the physician of either to submit a preliminary claim report and then requiring the subsequent submission of formal proof of loss forms, both of which submissions contain substantially the same information.
>
> (m) Failing to promptly settle claims, where liability has become reasonably clear, under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage.
>
> (n) Failing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement.
>
> (o) Failing to provide forms necessary to present claims within fifteen calendar days of a request with reasonable explanations regarding their use, if the insurer maintains the forms for that purpose.

La Rev. Stat. §22:1964(14) (West 2009).

## II. Summary Judgment Standard

"A party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof." Fed. R. Civ. Proc. 56(b). Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. Proc. 56(c).

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. . . . When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party. Fed. R. Civ. Proc. 56(e).

As the Fifth Circuit has pointed out:

This burden is not satisfied with 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence. We resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts. *We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts.* ...[S]ummary judgment is appropriate in *any* case "where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*)(citations omitted)(emphasis in original).

In evaluating the evidence provided in support of, and in opposition to a Motion for Summary Judgment, "[t]he court must view facts and inferences in the light most favorable to the party opposing the motion." *Hunt v. Rapides Healthcare Sys. LLC*, 277 F.3d 757, 762 (5th Cir. 2001).

"A factual dispute precludes a grant of summary judgment if the evidence would permit a reasonable jury to return a verdict for the non-moving party." Id. In evaluating evidence to determine whether a factual dispute exists, "[c]redibility determinations are not part of the summary judgment analysis." Id. To the contrary, "[i]n reviewing all the evidence, the court must disregard all evidence favorable to the moving party *that the jury is not required to believe*, and should give credence to the evidence favoring the non-moving party, *as well as that evidence supporting the moving party that is uncontradicted and unimpeached.*" Roberts v. Cardinal Servs., 266 F.3d 368, 373 (5th Cir. 2001) (emphases added).

### III. Law and Analysis

As jurisdiction in this matter is premised upon 28 U.S.C. §1332 (diversity of citizenship), Louisiana law governs the substantive issues of law. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). The parties do not dispute this. As such, the Court is *Erie* duty bound to apply Louisiana law. The Fifth Circuit's guidance to District Courts in this endeavor is as follows:

> To determine state law, federal courts sitting in diversity look to the final decisions of the state's highest court. In the absence of a final decision by the state's highest court on the issue at hand, it is the duty of the federal court to determine, in its best judgment, how the highest court of the state would resolve the issue if presented with the same case. . . .
>
> [The court must] employ the appropriate Louisiana civilian methodology to decide the issues presented the way that [the court] believe[s] the Supreme Court of Louisiana would decide them. Under Louisiana's Civil Code, the only authoritative sources of law are legislation and custom. Thus, in Louisiana, courts must look first and foremost to the state's primary sources of law: the state's constitution, codes, and statutes. As we have previously recognized, the primary basis of law for a civilian is legislation, and not (as in the common law) a great body of tradition in the form of prior decisions of the courts. Indeed, *stare decisis* is foreign to the Civil Law, including Louisiana. Jurisprudence, even when so cohesive and entrenched as to rise to the level of *jurisprudence constante* is merely a secondary law source. Therefore, while it is true that we will not disregard Louisiana appellate court

decisions unless we are convinced by other persuasive data that the highest court of the state would decide otherwise, particularly if numerous decisions are in accord on a given issue - the so-called *jurisprudence constante* - we are not strictly bound by them.

*American International Speciality Lines Ins. Co. v. Canal Indem. Co.*, 352 F.3d 254, 260 (5th Cir. 2003) (internal citations and quotations omitted).

### A.  Plaintiff's Motion for Partial Summary Judgment [Doc. 28]

In its motion for summary judgment, plaintiff seeks "partial" summary judgment on "liability" alone, without delineating which of the claims for which it seeks summary judgment. However, from a reading of the motion itself, plaintiff appears only to be seeking summary judgment on its claim for violation of the duty of good faith and fair dealing pursuant to La. Rev. Stat. §22:1220, as plaintiff alleges its motion "on grounds that all defendants as insurers breached the duty of good faith and fair dealing they owed their insured (complainant) by acts of misrepresentation which constituted a breach of their duties imposed on the defendants by LSA: R.S. 22:1220(B), all as more fully shown by the statement of material facts as to which Voorhies Supply Company contends there is no genuine issue to be tried . . ." Thus, in the motion for partial summary judgment itself, plaintiff makes no reference to its claims for the unauthorized practice of law, unjust enrichment, and/or unfair claims settlement practices.

This Court however, need not determine which, if any, of the additional claim or claims, plead in plaintiff's amended complaint, plaintiff addresses in its motion, as this Court concludes that, as to any of the above claims, the plaintiff is not due the relief requested *at this juncture*. This Court concludes there are genuine issues of material fact regarding whether the defendants breached the duty of good faith and fair dealing pursuant to La. Rev. Stat. §22:1220(B). Furthermore, to the extent this Court finds the motion could be read to seek summary judgment on grounds the

defendants have engaged in the unauthorized practice of law, this Court concludes the plaintiff has not shown, *at this juncture or as a matter of law*, that the defendants engaged in the unauthorized practice of law. This Court is not prepared, at this time, to declare such claim has or has not been met *as a factual* matter, thus, finds *summary* judgment on the claim inappropriate *at this time*. This Court also concludes the plaintiff has not satisfied its burden to show it is entitled to summary judgment on its claims for either unjust enrichment or unfair claims settlement practices *at this juncture*.

Considering the foregoing, IT IS ORDERED that plaintiff's motion for summary judgment [Doc. 28] is DENIED.

IT IS FURTHER ORDERED that the plaintiff file an outline of claims in the manner prescribed in the attached format for outlines. The plaintiff's outline is due on or before March 11, 2009 and shall not exceed 5 pages. The defendants' responsive outline is due on or before March 25, 2009 and shall not exceed 5 pages. The plaintiff may file a reply, not to exceed 2 pages, on or before April 1, 2009. To the extent cases are cited, pinpoint citations are required. Additionally, if the parties cite to an insurance policy or other document, the parties shall certify that the entirety of the document has been provided to the Court with the relevant portions highlighted. Furthermore, any document presented for this Court's consideration shall be Bates-stamped or otherwise uniformly numbered and when citing to the document, the parties shall identify the document by title, Bates stamp or other number, and line.

### B.  Defendants' Motion for Summary Judgment [Doc. 43]

In their Joint Motion for Summary Judgment, defendants "move the Court for summary judgment in [their] favor . . . dismissing the claims brought against them by [p]laintiff . . .with

prejudice." It therefore appears the defendants are requesting that this Court dismiss *all* claims brought by plaintiff against them. This Court will, therefore, examine each claim in turn.

Before the examination of each claim, however, this Court notes the first 20½ pages of defendants' 26-page memorandum is dedicated to a recitation of the factual background of this case and defendants' argument as to their understanding of the law concerning allocation of liability among insurance companies in long-term exposure cases. While some of this information may, ultimately, prove helpful to the Court, the Court suggests that is not the issue now before this Court. The issue now before the Court does not encompass allocation of coverage in mesothelioma cases such as the underlying *Tabor* case. Indeed, the underlying personal injury and coverage lawsuit was filed, litigated, and settled in state court. The instant lawsuit was filed by an insured against its insurers for alleged *bad faith representation* during that lawsuit and for – primarily, but not exclusively – alleged breaches of *the duty of good faith and fair dealing* during the pendency of that lawsuit. To the extent *the actual state of the law* concerning coverage led the insurers *to believe* they were or were not acting in good faith during the pendency of the lawsuit, the actual state of the law concerning coverage may be relevant to this Court's ultimate decision. However, based on the attachments to the motions – including the reservations of rights letters and other correspondence this Court has reviewed in connection with the pending motions – it appears *at this time* the *actual state of the law as to coverage* is *not* determinative as to the *legal issues* before this Court, but might be *factually relevant* as to those legal issues when applied to a determination on the merits.

Be that as it may, this Court turns its attention to the actual motion for summary judgment filed by the defendants in the instant lawsuit and an examination of the claims alleged by the plaintiffs against the defendants.

1.  **Unauthorized Practice of Law**

Defendants seek summary judgment on plaintiff's unauthorized practice of law claim in violation of La. Rev. Stat. §37:212, contending the facts, as alleged by the plaintiff, do not support such a claim. Although this Court acknowledges under existing jurisprudence a claimant prosecuting such a claim must satisfy a high standard, this Court concludes plaintiff has met his burden to meet defendant's argument and presented facts and evidence sufficient to defeat defendant's motion. This Court finds there are, at the very least, genuine issues of material fact regarding plaintiff's claim under the unique circumstances of this case.

During settlement negotiations with Tabor's counsel, Ms. Scheib, counsel for Voorhies Supply, but hired by OCG (and perhaps Kemper – that is not clear), to supply a defense to OCG and insured, Voorhies Supply, within the personal injury lawsuit – advised Kemper and OCG of the following in a letter sent during the March 2007 settlement negotiations:

> Even if Voorhies Supply could be held liable for any bodily injury before 1988 (and we have concluded that it could not), *there is no case law in Louisiana which holds that an insured is responsible for any uninsured years. Should Voorhies Supply litigate the issue against its insurers, the Court would rule that the insurance companies are responsible for any judgment against Voorhies Supply pro rata up to their limits of liability with no contribution from the insured, Voorhies Supply.*
>
> Moreover, should I be asked to go to Voorhies Supply and request a contribution to the settlement, **I could not give Voorhies Supply any advice regarding coverage.** I would, however, have a duty to advise Voorhies Supply to retain a lawyer to provide it with advice. (Emphasis added.)
>
> *Any good coverage lawyer who I would recommend to Voorhies Supply would [in] all likelihood immediately enroll a additional counsel and file a Third Party Demand against the insurance companies, seeking a ruling that Voorhies Supply will not be responsible for any portion of a judgment against it. This would not be*

*in the best interests of any of the parties.*[6]

Ms. Scheib quite properly stated, given the reservation of rights made, that she could not give coverage advice to Voorhies Supply and, if Voorhies Supply were required to obtain its own legal advice, Ms. Scheib opined Voorhies Supply would learn *"there is no case law in Louisiana which holds that an insured is responsible for any uninsured years"* and a court would likely *"rule that the insurance companies are responsible for any judgment against Voorhies Supply pro rata up to their limits of liability with no contribution from the insured, Voorhies Supply."* Despite the foregoing, Ms. Woodcock – Kemper's adjuster – contacted Voorhies Supply and conveyed advice and legal opinion as to Louisiana law which was in direct contradiction to the legal opinion given by the attorney hired by OCG to defend Voorhies Supply. Ms. Scheib told Voorhies Supply that *Voorhies Supply would have exposure for certain uninsured periods* and OCG and Kemper intended to pay only certain amounts toward the settlement of Tabor's claim and *Voorhies Supply would have to pay the remainder in order to settle the claim*. Thus, Kemper's adjuster did exactly what Voorhies Supply's attorney – reporting to both Kemper and OCG [7] – has said she, as an attorney, could *not* do, and conveyed a legal opinion that was *dramatically altered* from the substantive legal opinion Kemper had received from Ms. Scheib. There is no indication from the evidence and argument before this Court that Kemper's representative was merely transmitting the considered legal opinion of *another* lawyer and clearly, Kemper's representative was not transmitting the legal opinion given by its reporting attorney. Furthermore, in so doing Kemper's

---

[6] *See* Letter dated April 2, 2007 from Julie Scheib Viator to Jean Woodcock, and cc'd to Paula Matheny, attached as Exhibit "G" to defendants' memorandum in support of motion for summary judgment, Doc. 43.

[7] Ms. Scheib – representing Voorhies Supply on the reservation of rights – reported to both OCG and Kemper. Ms. Scheib sent her April 2, 2007 opinion letter to Ms. Woodcock, and copied Ms. Matheny, OCG's adjuster, on the letter.

-14-

representative did exactly what *its* reporting attorney, who was hired by OCG (and perhaps Kemper) to represent Voorhies Supply, quite correctly stated she could *not* do – i.e., give advice to Voorhies Supply as to coverage – given the reservation of rights made, and additionally gave advice as to the law and consequence of the law, which did not flow from the reporting attorney, or it would seem, from any other identified attorney, all of which was in direct contradiction to the legal advice Kemper and OCG had received from Ms. Scheib.

Under these unique factual circumstances, this Court concludes there are *at the very least*, genuine issues of material fact regarding whether a defendant insurance company or both insurance companies engaged in the unauthorized practice of law, and IT IS ORDERED that defendants' joint motion for summary judgment on this claim is DENIED.

### 2. Breach of Duty of Good Faith and Fair Dealing

For the same reasons explained by the Court in reference to plaintiff's claim for the unauthorized practice of law, this Court concludes there also, are genuine issues of material fact regarding whether defendants breached their duty of good faith and fair dealing with their insured, in violation of La. Rev. Stat. §22:1220. The parties are referred to the section immediately preceding this section for a discussion of the Court's reasoning in connection with its ruling on this issue. Specifically, this Court finds there are genuine issues of material fact regarding the issue of whether the defendant insurers "misrepresented anything to Voorhies Supply with respect to coverage."[8]

Considering the foregoing, defendants' joint motion for summary judgment on plaintiff's claim for breach of the duty of good faith and fair dealing in violation of La. Rev. Stat. §22:1220 is

---

[8] Additionally implicated within the arguments of the plaintiff is the more generic claim of liability that flows from the contract itself between the insured and the insurers and the provisions of that contract, which might or might not place a duty on the insurers to deal in good faith with their insured.

DENIED.

### 3. Unfair Claims Settlement Practices

In Paragraph 19 of their Amended Complaint, plaintiff alleges the following:

19.

In the course of toxic tort cases, such as the Tabor lawsuit, the defendants have committed and performed with such frequency as to indicate a general business practice, the misrepresentation of <u>insurance policy</u> provisions and have failed to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for their demand for contribution of compromises from their insureds in cases where exposure law is applicable and the insured has not identified insurance coverage for the total period of the alleged exposure.

20.

The acts alleged in Paragraph 19 constitute unfair claims settlement practices which are in violation of La. R.S. 22:1214(14).

In their motion for summary judgment, defendants contend there is no private right of action under Section 22:2214(14), which, as previously noted, has been renumbered by the Louisiana legislature as La. Rev. Stat. §22:1973. This Court agrees. *See Clausen v. Fidelity and Deposit Co. of Maryland*, 660 So.2d 83, 86 (La. App. 1st Cir.1995) (court concluded statute formerly numbered as La. Rev. Stat. §22:1214 does not provide for a private cause of action). *See also Riley v. Transamerica Ins. Group Premier Ins. Co.*, 923 F.Supp. 882, 888 (E.D. La. 1996) (statute formerly numbered as La. Rev. Stat. §22:1214 provides no private cause of action), *aff'd*, 117 F.3d 1416 (5th Cir. 1997). Plaintiff has submitted no jurisprudence to the contrary.

Considering the foregoing, this Court concludes summary judgment in defendants' favor on this claim is appropriate. Therefore, defendants' motion for summary judgment seeking dismissal of plaintiff's claim for unfair claims settlement practices is GRANTED, and plaintiff's claim for

unfair claims settlement practices against all defendants pursuant to La. Rev. Stat. §22:1214(14), now re-numbered as La. Rev. Stat. §22:1973, is DENIED AND DISMISSED WITH PREJUDICE.

IV. **Conclusion**

Considering the foregoing,

IT IS ORDERED that plaintiff's motion for summary judgment [Doc. 28] is DENIED.

IT IS FURTHER ORDERED that the plaintiff file an outline of claims in the manner prescribed in the attached format for outlines. The plaintiff's outline is due on or before March 11, 2009 and shall not exceed 5 pages. The defendants' responsive outline is due on or before March 25, 2009 and shall not exceed 5 pages. The plaintiff may file a reply, not to exceed 2 pages, on or before April 1, 2009. To the extent cases are cited, pinpoint citations are required. Additionally, if the parties cite to an insurance policy or other document, the parties shall certify that the entirety of the document has been provided to the Court. Furthermore, any document presented for this Court's consideration shall be Bates-stamped or otherwise uniformly numbered and when citing to the document, the parties shall identify the document by title, Bates stamp or other number, and line.

IT IS FURTHER ORDERED that defendants' joint motion for summary judgment seeking dismissal of plaintiff's claim for the unauthorized practice of law in violation of La. Rev. Stat. §37:212 is DENIED.

IT IS FURTHER ORDERED that defendants' joint motion for summary judgment seeking dismissal of plaintiff's claim for breach of the duty of good faith and fair dealing in violation of La. Rev. Stat. §22:1220, now renumbered as La. Rev. Stat. §22:1973, is DENIED.

IT IS FURTHER ORDERED that defendants' motion for summary judgment seeking dismissal of plaintiff's claim for unfair claims settlement practices is GRANTED, and plaintiff's

claim for unfair claims settlement practices against all defendants pursuant to La. Rev. Stat. §22:1214(14), now re-numbered as La. Rev. Stat. §22:1973, is DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that within 15 days of the submission of the parties' outlines, counsel are to jointly contact this Court for the purpose of scheduling a telephone status conference with all counsel and this Court to set this matter for trial. IT IS ORDERED that counsel for the defendants shall initiate the telephone status conference that is ultimately set to select the trial date.

THUS DONE AND SIGNED in Lafayette, Louisiana, this _____ day of February, 2009.

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE