RECEIVED
JUN - 9 2009
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| VOORHIES SUPPLY CO., L.L.C | CIVIL ACTION NO. 07-1357 |
| VERSUS | JUDGE DOHERTY |
| OHIO CASUALTY INS. CO. ET AL. | MAGISTRATE JUDGE METHVIN |

### MEMORANDUM RULING

Pending before this Court is the Motion for Reconsideration filed by defendants The Ohio Casualty Insurance and West American Insurance Company (collectively, "OCG") and American Manufacturers Mutual Insurance Company and American Motorist Insurance Company (collectively, "Kemper") (all movant insurance companies hereinafter referred to collectively as "defendants"). In their motion, defendants seek reconsideration of those portions of this Court's February 20, 2009 Memorandum Ruling in which this Court denied defendants' Joint Motion for Summary Judgment, on grounds the Court's Ruling is based upon two errors of fact and one error of law. Based on the foregoing, defendants urge this Court to grant their Motion for Summary Judgment in its entirety.

The Motion for Reconsideration is opposed by plaintiff Voorhies Supply Co., L.L.C. ("Voorhies Supply") [Doc. 60], and defendants have filed a reply brief [Doc. 65]. For the following reasons, the Motion for Reconsideration is GRANTED in order for the Court to clarify certain portions of the February 20, 2009 Memorandum Ruling. However, this Court AFFIRMS the February 20, 2009 Memorandum Ruling in its entirety, for the following reasons.

**I.  Factual and Procedural History**

The factual and procedural history have been set forth in detail in the February 20, 2009

Memorandum Ruling issued by this Court and, therefore, will not be repeated here. However, because one of the alleged errors of fact is contained in the Factual History section of the February 20, 2009 Ruling, the Memorandum Ruling issued this date will address that argument and clarify the February 20, 2009 Ruling.

## II. Law and Analysis

District courts have substantial discretion in determining whether to grant or deny a motion to alter or amend judgment pursuant to Rule 59(e). *See Weber v. Roadway Express, Inc.*, 199 F.3d 270, 276 (5th Cir. 2000); *Edward H. Bohlin Co., Inc. v. Banning Co., Inc.*, 6 F.3d 350, 355 (5th Cir. 1993). Nevertheless, the jurisprudence shows Rule 59(e) recognizes only three grounds on which to alter or amend reasons for judgment: (1) an intervening change in controlling law; (2) the availability of new evidence not previously available; or (3) the need to correct a clear error of law or fact or to prevent a manifest injustice. *Schiller v. Physicians Resource Group, Inc.*, 342 F.3d 563, 566 (5th Cir. 2003).

A motion to alter or amend judgment "is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised prior to the entry of judgment." *Templet v. HydroChem, Inc.*, 367 F.3d 473, 479 (5th Cir. 2004). Rather, Rule 59(e) "serve[s] the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence." "[A]n unexcused failure to present evidence available at the time of summary judgment provides a valid basis for denying a subsequent motion for reconsideration." *Id.*

## II. Alleged Errors of Fact

### 1. Ms. Schieb's representative capacity

Defendants argue their motion for summary judgment should be granted in its entirety, in

-2-

part, because this Court incorrectly stated the following in the section entitled "Factual and Procedural History" of the February 20, 2009 Memorandum Ruling:

> **Ms. Schieb defended the underlying personal injury lawsuit, Tabor, in state court *and ultimately represented Voorhies Supply, OCG, and Kemper in the state court lawsuit.***

*See* Memorandum Ruling, Doc. 55, at p. 3 (emphasis added).

Defendants contend OCG and Kemper were *not*, in fact, parties to the state court lawsuit, and Ms. Scheib did not represent OCG or Kemper in any capacity in that litigation. Therefore, *defendants contend* when Ms. Scheib communicated to OCG and Kemper it was her opinion Voorhies Supply would not be responsible for any uninsured years, *she was advocating for her client*, Voorhies Supply, and OCG and Kemper simply disagreed with Ms. Scheib concerning the extent of Voorhies Supply's potential exposure.

Voorhies Supply does not argue Ms. Scheib did, in fact, represent OCG and Kemper in the state court lawsuit, but rather, *argues OCG and Kemper had an attorney-client relationship with Ms. Scheib by virtue of the fact those companies had hired Ms. Scheib to represent their insured*, Voorhies Supply. Plaintiff appears to argue because of this attorney-client relationship, and by virtue of the defendant insurance companies' direction and control of the defense of the *Tabor* case *through* Ms. Scheib, as well as their access to all reports from Ms. Scheib, OCG and Kemper were in a position to breach their duty of good faith and fair dealing imposed by La. Rev. Stat. §22:1973(A) (formerly La. Rev. Stat. §22:1220(A).[1]

---

[1] This Court notes that since the filing of the parties' motions, La. Rev. Stat. §22:1220 has been renumbered as La. Rev. Stat. §22:1973 by Acts 2008, No. 415, effective Jan. 1, 2009. The substance of the law has not changed. Because Section 22:1220 was in effect at the time of the alleged breach of duty, this Court will refer to the section as it was numbered at the time of the alleged breach.

La. Rev. Stat. §22:1220 states in pertinent part:

-3-

After review of the briefs, this Court recognizes and acknowledges the Court's statement when taken out of context could appear to be incorrect, however, this Court notes in other portions of the Memorandum Ruling, this Court correctly noted the representation status of Ms. Scheib vis-a-vis Voorhies Supply and OCG and Kemper. Indeed, on page 14 of the Ruling, this Court states Ms. Scheib was "Voorhies Supply's attorney – reporting to both Kemper and OCG . . ." Furthermore, this Court inserted a footnote, in the middle of that sentence, – footnote 7 – and stated:

> Ms. Scheib – *representing Voorhies Supply on the reservation of rights – reported to both OCG and Kemper.* Ms. Scheib sent her April 2, 2007 opinion letter to Ms. Woodcock, and copied Ms. Matheny, OCG's adjuster, on the letter.

*See* Memorandum Ruling, Doc. 55, at p. 14, n.7 (emphasis added).

Thus, this Court made clear its understanding that Ms. Scheib *represented only* Voorhies Supply, but that Ms. Schieb *reported to* both OCG and Kemper, and that Ms. Scheib sent her April 2, 2007 opinion letter to both Kemper's adjuster and OCG's adjuster.

Additionally, on page 15 of the Memorandum Ruling, this Court states:

> Furthermore, in doing so, Kemper's representative did exactly what its **reporting attorney,** *who was hired by OCG (and perhaps Kemper)* **to represent Voorhies Supply, quite correctly stated she could not do** – i.e., give advice to Voorhies Supply as to coverage – given the reservation of rights made, and additionally gave advice as to the law and consequence of the law, which did not flow from the reporting attorney, or it would seem, from any other identified attorney, all of which

---

A. An insurer, including but not limited to a foreign line and surplus line insurer, owes to his insured a duty of good faith and fair dealing. The insurer has an affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured or the claimant, or both. Any insurer who breaches these duties shall be liable for any damages sustained as a result of the breach.

B. Any one of the following acts, if knowingly committed or performed by an insurer, constitutes a breach of the insurer's duties imposed in Subsection A:

> (1) *Misrepresenting pertinent facts or insurance policy provisions relating to any coverages at issue. . . .*

La. Rev. Stat. 22:1973(A) & (B)(1) (West 2009) (emphasis added).

was in direct contradiction to the legal advice Kemper and OCG had received from Ms. Scheib.

*Id.* at p. 15. (emphasis added)

The foregoing reflects this Court's understanding that Ms. Scheib was, in fact, hired **to represent** Voorhies Supply *only* in the state court litigation, and not OCG and Kemper, but *reported to OCG and Kemper* to the extent the "Factual and Procedural History" portion of the February 20, 2009 Memorandum Ruling could be read to infer otherwise, it is amended. Therefore, to the extent the February 20, 2009 Memorandum Ruling could be read to contain an inaccurate statement that Ms. Scheib "ultimately represented OCG and Kemper" in the state court litigation, the foregoing and the February 20, 2009 Memorandum Ruling is hereby AMENDED to remove that limited reference from the Ruling.

The clairification of the foregoing statement in the February 20, 2009 Memorandum Ruling, however, does not materially affect the substance of the Ruling, as this Court's understanding of the true nature of Ms. Scheib's representation, was and is clearly evidenced by this Court's reference to Ms. Scheib's status as counsel for Voorhies Supply *only* in other portions of the Ruling. Therefore, this Court's Ruling was not based on the alleged misstatement of fact, as defendants argue and therefore, is not grounds for granting defendants' motion for summary judgment in its entirety. Therefore, this Court finds defendants' argument on this point is without merit.

### 2. OCG/Kemper's Consultation of Another Attorney Regarding Coverage

In their motion, defendants contend the Court, in its February 20, 2009 Memorandum Ruling, improperly suggests OCG and/or Kemper did not consult an attorney regarding coverage before Kemper's representative – Ms. Woodcock – communicated to Voorhies Supply it would have

exposure for certain uninsured periods, in direct contradiction to the legal opinion of its reporting attorney, Ms. Scheib. For the parties' benefit and clarity of the record as the Court discusses this issue, the entirety of Ms. Schieb's April 2, 2007 letter is set forth below:

> Even if Voorhies Supply could be held liable for any bodily injury before 1988 (and we have concluded that it could not), *there is no case law in Louisiana which holds that an insured is responsible for any uninsured years. Should Voorhies Supply litigate the issue against its insurers, the Court would rule that the insurance companies are responsible for any judgment against Voorhies Supply pro rata up to their limits of liability with no contribution from the insured, Voorhies Supply.*
>
> Moreover, should I be asked to go to Voorhies Supply and request a contribution to the settlement, **I could not give Voorhies Supply any advice regarding coverage.** I would, however, have a duty to advise Voorhies Supply to retain a lawyer to provide it with advice. (Emphasis added.)
>
> *Any good coverage lawyer who I would recommend to Voorhies Supply would [in] all likelihood immediately enroll a additional counsel and file a Third Party Demand against the insurance companies, seeking a ruling that Voorhies Supply will not be responsible for any portion of a judgment against it. This would not be in the best interests of any of the parties.*[2]

(emphasis added).

In the instant motion for reconsideration, OCG contends in November 2004, it did, in fact, obtain a coverage opinion from the attorneys representing defendants in *this* matter, which opinion was later shared with Kemper. Current counsel for OCG and Kemper allege this coverage opinion advised that under the exposure theory, Voorhies Supply would be responsible for any uninsured years. Defendants contend the substance of this coverage opinion was shared by OCG with Voorhies Supply in December 2004 - over two years before resolution of the underlying suit – in a letter dated December 15, 2004 from Paula Matheny (claims adjuster for OCG) to Kathy Lemoine (a

---

[2] *See* Letter dated April 2, 2007 from Julie Scheib Viator to Jean Woodcock, and cc'd to Paula Matheny, attached as Exhibit "G" to defendants' memorandum in support of motion for summary judgment, Doc. 43.

representative of Voorhies Supply), and cc'd to Ms. Woodcock of Kemper. In this letter, which was attached as an exhibit to defendants' original motion for summary judgment, Ms. Matheny wrote:

> "[OCG has] been **advised** that Louisiana courts have adopted the 'exposure' theory for latent injury cases such as asbestos. This means that those insurers on the risk during the time of the claimant's exposure may have an obligation to defend and/or indemnify. **We have also been advised** that, under Louisiana law, the insured may be responsible for damages attributable to those years in which there were no insurance policies, or for which policies cannot be identified. Thus, it is incumbent upon Voorhies Supply Co. to determine whether it was insured for those earlier years in which Mr. Tabor may have been exposed."

(emphasis added).

Thus, defendants now argue when Ms. Woodcock contacted Voorhies Supply on April 3, 2007 regarding the imminent deadline for settlement of the *Tabor* lawsuit, Ms. Woodcock's discussion with Voorhies Supply's representative was based on the above-mentioned November 2004 coverage opinion. Therefore, defendants contend this Court's statement that Ms. Woodcock apparently did not consult with another attorney before contacting Voorhies Supply's representative is erroneous. Defendants further contend Ms. Woodcock was merely transmitting the considered legal opinion rendered in current counsel's November 2004 coverage opinion, as opposed to "advising or counseling" Voorhies Supply as to secular law. Additionally, for the first time in this motion for reconsideration, defendants' counsel offer – "if the Court is interested" – to provide the Court "with a copy of the coverage opinion rendered in this matter for an *in camera* review," a suggestion vehemently opposed by Voorhies Supply's counsel.

Defendants' argument is misplaced for several reasons. First, this Court was aware of the

-7-

December 15, 2004 letter from Paula Matheny to Kathy Lemoine[3] when it issued the February 20, 2009 Memorandum Ruling. However, this Court could not have known – based on the generalized language contained in that letter (e.g., "we have been advised") – that current counsel for defendants had actually provided, in November 2004, a coverage opinion to OCG and that this coverage opinion was being argued as the underlying basis for the generalized language "we have been advised" contained in the December 15, 2004 letter. Current counsel for defendants are providing this Court with that information for the first time in this motion for reconsideration. Notwithstanding the foregoing, however, this Court declines to review the November 2004 coverage opinion provided by current counsel at this juncture, primarily for two reasons. First, as previously noted, "an unexcused failure to present evidence available at the time of summary judgment provides a valid basis for denying a subsequent motion for reconsideration." *Templet v. HydroChem, Inc.*, 367 F.3d 473, 479 (5th Cir. 2004). Here, defendants had their November 2004 coverage opinion at the time they filed their motion for summary judgment but declined to clearly argue or offer the letter for an in camera in their originally-filed motion for summary judgment.

Second, the fact that defendants might have provided a coverage opinion in November 2004 to OCG is not controlling to this Court's determination *on motion for summary judgment*, as this Court did not *base its ruling on summary judgment* on the fact that Ms. Woodcock had or had not been given a legal opinion from another attorney before contacting Voorhies Supply on the eve of settlement. Rather, this Court denied defendants' *motion for summary judgment* on Voorhies

---

[3] Although not referenced specifically, on page 2 of this Court's February 20, 2009 Ruling, the Court stated Ms. Matheny sent "*several letters to Voorhies Supply*, including a reservation of rights letter, in which OCG reserved certain rights with regard to the insurance coverage . . ." The December 15, 2004 letter is one of the letters the Court reviewed and implicitly included in that statement.

Supply's claim that OCG and/or Kemper engaged in the unauthorized practice of law because Ms. Woodcock – after having been advised by Ms. Schieb that Ms. Schieb, *as counsel*, could not give Voorhies Supply advice regarding coverage – chose to contact Voorhies Supply and do exactly that, i.e. arguably give advice, not only about OCG and/or Kemper's position as to coverage, *but also, as to Voorhies' possible coverage, or lack thereof, as well as Voorhies' possible liability and Voorhies' position as to settlement – all matters counsel provided by OCS and Kemper to Voorhies, clearly had informed Kemper she, **as counsel**, could not do.*

In their original joint motion for summary judgment, defendants attempt to characterize what Ms. Woodcock conveyed as nothing more than the insurance companies advising their insured as to the insurers' position regarding coverage, to wit:

> Because Ms. Schieb was not prepared to notify Voorhies [Supply] of the insurer's position that Voorhies [Supply] faced an uninsured liability for those exposure years for which Voorhies [Supply] could not demonstrate the existence of insurance, Ms. Woodcock contacted Voorhies [Supply] directly to advise them of the insurer's position with respect to same, in light of the approaching trial date and the expiration of the settlement demand.
>
> Voorhies [Supply] takes the position, or at least implies, that Ms. Woodcock's actions in "going around" Ms. Schieb was somehow improper. To the contrary, having been advised by Ms. Schieb that she disagreed with the insurer's position as to Voorhies [Supply], Ms. Woodcock had an obligation to see to it that Voorhies [Supply] was advised of the possibility to an uninsured exposure under the facts reported and of the insurer's position with respect to same.[4]

However, the defendant insurance companies' attempts to characterize Ms. Woodcock's communications to Voorhies Supply as nothing more than conveying the "position" of the insurance companies regarding coverage arguably are hollow, as the insurance companies conveyed substantially more than that.

---

[4] *See* defendants' memorandum in support of joint motion for summary judgment, Doc. 43, at pp. 9-10.

Attached to their memorandum in support of their joint motion for summary judgment, defendants attached an email from Ms. Woodcock to Mr. McGrew, memorializing the communication between the two earlier that day. The email reads as follows:

> Ken,
>
> This will confirm our telephone conversation this morning.
>
> On 3/28/7, Julie Scheib [sic], defense counsel, requested settlement authority in the amount of 100K to settle the Tabor case.
>
> **As you know, the law in Louisiana is exposure[.]**
>
> Based on Tabor's exposure to Voorhies supplies at the Iberia Sugar Co-Op, Kemper has authorized our share, 33.34%, of settlement up to 100K, or $33,340.00.
>
> As stated in Ohio Casualty's email dated 4/2/07, they have authorized settlement up to 100K based on their percentage share.
>
> It is my understanding from our conversation this morning, Voorhies has also authorized settlement up to 100K.
>
> Ohio Casualty's percentage is 8.33% **and Voorhies' is 58.33%**.
>
> If you have any questions, please call me.
>
> Jean M. Woodcock.[5] (emphasis added)

As stated in defendants' motion for summary judgment, defendants portray the email as follows:

> By email dated April 3, 2007 from Kemper to Ken McGrew (hereinafter "McGrew") of Voorhies, Kemper reminded McGrew that *based on Louisiana law of exposure, Kemper's share of any settlement would be 33.34%, OCG's share would be 8.33%, and Voorhies' share would be 58.33%.* On or about the same day, Voorhies retained Mr. John Blackwell, Esq. as separate counsel, for advice in response to Kemper and OCG's demand that Voorhies fund 58.33% of any settlement in the Tabor matter. *On April 5, 2007, OCG sent an email to Mr. Blackwell, stating that OCG must adhere to Louisiana law regarding any settlement offer for the Tabor suit, based*

---

[5] *Id.* (Emphasis added).

*on exposure theory for payment of any damages for which Voorhies may be liable, and that OCG was willing to pay its pro rate share or 8% of any settlement up to $125,000.00 or $10,000.00.* Although Voorhies [Supply] disagreed that it was responsible for 58.33% of the total settlement amount, the Tabor suit then settled on or about April 5, 2007 for at total of $125,000.00, allocated pro–rata based on coverage, as follows: Voorhies [Supply], $72,912.50 (58.33%); Kemper, $41,675.00 (33.34%); )CG, $10,412.50 (8.33%).

Indeed, Ms. Woodcock knew Ms. Schieb could not give Voorhies Supply legal advice as to coverage, however, Ms. Woodcock, arguably, chose to do just that. Rather than advising Voorhies Supply to retain an attorney to render coverage advice, Ms. Woodcock – who is not an attorney -- contacted Voorhies Supply directly – before it was represented by separate counsel – and arguably, told its representative that *based on Louisiana law Voorhies Supply would have exposure for certain uninsured periods,* **with a percentage of liability at 58.33%** and OCG and Kemper intended to pay only certain amounts toward the settlement of Tabor's claim, thus, the reasonable inference was *Voorhies Supply would have to pay the remainder in order to settle the claim*. Thus, Ms. Woodcock did *exactly* what Voorhies Supply's attorney had said she, as an attorney, could *not* do, and also, arguably, conveyed a legal opinion that was *dramatically altered* from the substantive legal opinion Kemper had received from Ms. Scheib, opined as to the state of Louisiana law, and arguably advised Voorhies Supply as to Voorhies' exposure in the settlement negotiations. Moreover, again, arguably, Ms. Woodcock went one step further and *advised Voorhies Supply as to the degree of its individual corporate liability.*[6]

This Court concludes the nature of what Ms. Woodcock conveyed to Voorhies Supply on April 3, 2007, *as a factual matter* – that is, whether Ms. Woodcock was giving legal advice to Voorhies Supply in contravention of the law or was merely stating the position of the insurance

---

[6] *See* email memorializing conversation between Ms. Woodcock and Ken McGrew, attached as Exhibit "H" to defendants' memorandum in support of motion for summary judgment, Doc. 43.

company — **is a question grounded in factual dispute and credibility and thus, one for the trier of fact.** Therefore, this Court does not, today, find Voorhies Supply has or has not *proven* its claim for unauthorized practice of law, but rather, finds there are *genuine issues of material fact regarding whether the defendant insurance companies engaged in the unauthorized practice of law* given **the unique circumstances of this case.**

Considering the foregoing, to the extent the February 20, 2009 Memorandum Ruling might be read to have contained an erroneous statement of fact based on information this Court was not provided by defendants' in their original motion for summary judgment, the February 20, 2009 Memorandum Ruling is hereby AMENDED to remove the noted statement.

However, as the inclusion of the foregoing statement in the February 20, 2009 Memorandum Ruling does not materially affect the substance of the Ruling, this Court concludes the inclusion of the statement is not grounds for granting defendants' motion for summary judgment in its entirety. Therefore, defendants' argument on this point is without merit, and this Court's denial of defendants' joint motion for summary judgment on plaintiff's claim that defendants engaged in the unauthorized practice of law is AFFIRMED.

### III. Alleged Error of Law

Defendants take issue with the following phrase contained in the February 20, 2009 Memorandum Ruling:

> [I]t appears *at this time* the *actual state of the law as to coverage* is *not* determinative as to the *legal issues* before this Court . . .

*See* Memorandum Ruling, Doc. 55, at p. 12.

Defendants disagree, arguing under Louisiana law, an insurer cannot be in bad faith when

-12-

it denies coverage with reasonable cause. Therefore, defendants contend if their appreciation of Louisiana law regarding coverage is correct, then Voorhies Supply will not likely be able to prove its damages resulting from any sort of unauthorized practice of law claim pursuant to La. Rev. Stat. §37:212.[7] Accordingly, defendants contend the actual state of the law as to coverage *is* determinative as to the legal issue of whether OCG and Kemper were in violation of La. Rev. Stat. §22:1220, and also determinative of Voorhies Supply's claim for damages for unauthorized practice of law claim under La. Rev. Stat. §37:212.

The Court notes the defendants's characterization of the Court's statement – taken out of context – is, as a factual matter, erroneous in and of itself. Defendants have failed to include the entirety of the sentence or context contained in the Court's February 20, 2009 Memorandum Ruling and have chosen to take issue with only a selected portion of the Ruling in the instant motion. The

---

[7] La. Rev. Stat. 37:212(A) states:

A. The practice of law means and includes:

(1) In a representative capacity, the appearance as an advocate, or the drawing of papers, pleadings or documents, or the performance of any act in connection with pending or prospective proceedings before any court of record in this state; or

(2) For a consideration, reward, or pecuniary benefit, present or anticipated, direct or indirect;

(a) The advising or counseling of another as to secular law;

(b) In behalf of another, the drawing or procuring, or the assisting in the drawing or procuring of a paper, document, or instrument affecting or relating to secular rights;

(c) The doing of any act, in behalf of another, tending to obtain or secure for the other the prevention or the redress of a wrong or the enforcement or establishment of a right; or

(d) Certifying or giving opinions as to title to immovable property or any interest therein or as to the rank or priority or validity of a lien, privilege or mortgage as well as the preparation of acts of sale, mortgages, credit sales or any acts or other documents passing titles to or encumbering immovable property.

La. Rev. Stat. §37:212 (West. 2009).

complete sentence as set forth in the Ruling states as follows:

> *To the extent the actual state of the law concerning coverage led the insurers to believe they were or were not acting in good faith during the pendency of the lawsuit, <u>the actual state of the law concerning coverage may be relevant to this Court's ultimate decision</u>. However, based on the attachments to the motions –* including the reservations of rights letters and other correspondence this Court has reviewed in connection with the pending motions – *it appears <u>at this time</u> the actual state of the law as to coverage is not determinative as to the legal issues before this Court, <u>but might be factually relevant as to those legal issues when applied to a determination on the merits.</u>*

*See* Memorandum Ruling, Doc. 55, at p. 12.

Thus, the foregoing paragraph, when read in its entirety, shows the Court's full intentions and understandings with respect to this issue. The Court did not as argued, find the state of the law with respect to coverage would have no bearing on or relevance to the claims pled by either party in this lawsuit. To the contrary, the Court specifically stated the actual state of the law concerning coverage *"may be relevant to this Court's ultimate decision."* The Court went on to note, however, it *appeared from the attachments to the motions at issue*, coverage law is not determinative of **the legal issues, which were before the Court** *on summary judgment.* Indeed, the foregoing was included in the Ruling largely in response to the fact that the first 20½ pages of defendants' 26-page motion for summary judgment addressed defendants' argument concerning coverage law and the law concerning allocation of liability among insurance companies in long-term exposure cases. This Court suggested those issues had, perhaps, already been settled in state court; however, this Court stated the law of coverage could be *factually relevant* to the Court's determination on the merits of the case, and this Court in no way, foreclosed the possibility coverage law could be *legally relevant* to the claims pending before this Court and to argue otherwise is disingenuous. This Court also, notes it *did not grant* the motion for summary judgment *filed by Voorhies Supply*, which sought

summary judgment on the same issues as those sought in defendants' motion. Rather, with respect to both motions, this Court held *there are genuine issues of material fact regarding whether the defendant insurance companies engaged in the unauthorized practice of law and/or breached the duty of good faith and fair dealing to their insured, Voorhies Supply.*

Considering the foregoing, defendants' argument that this Court committed an error of law is without merit.

## IV. Conclusion

For the foregoing reasons,

IT IS ORDERED that defendants' Motion for Reconsideration is GRANTED in order for the Court to clarify certain portions of the February 20, 2009 Memorandum Ruling. Specifically, the Ruling is clarified to remove the erroneous factual information discussed herein concerning the representation status of Ms. Schieb and the erroneous information regarding whether Ms. Woodcock consulted with an attorney prior to contacting a representative of Voorhies Supply on April 3, 2007.

IT IS FURTHER ORDERED that the inclusion of the foregoing alleged erroneous statements in the February 20, 2009 Memorandum Ruling does not materially affect the substance of the Ruling, and, therefore, does not constitute grounds for granting defendants' motion for summary judgment in its entirety.

IT IS FURTHER ORDERED that defendants' motion for reconsideration on grounds this Court committed an error of law is without merit.

IT IS FURTHER ORDERED the February 20, 2009 Memorandum Ruling is AFFIRMED in its entirety.

IT IS FURTHER ORDERED that counsel shall jointly contact this Court within five days of the date of this Memorandum Ruling for the purpose of scheduling a telephone status conference with all counsel and this Court to set this matter for trial. IT IS ORDERED that counsel for the defendants shall initiate the telephone status conference that is ultimately set to select the trial date.

THUS DONE AND SIGNED in Lafayette, Louisiana, this ____ day of June 2009.

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE